Dissenting opinion of
Judge Burnet :
Having dissented from the opinion of the court in this case, it becomes my duty to assign the reasons which have induced me to •do so. The cause having been certified to the Supreme Court for the want of a constitutional quorum of disinterested judges to ■hear and determine it, in the court below, it necessarily comes before us as it stood before them, and it is our duty to examine the proceedings as though they had all taken place in this court, for ■the purpose of ascertaining whether they have been such as to entitle the applicant to the benefit of his motion.
I am so unfortunate as to differ from my brother judges, who have taken a part in the decision of this case, at the very threshold, as to the extent of the ground we are authorized, or required to occupy. They draw a very marked distinction between this investigation, and that which would be proper on a motion to set aside an execution. I confess that I do not discover any difference in the latitude of inquiry that is admissible or necessary in the two cases. I do not contend that the court can go behind the •judgment in either case, but I do contend that the object of this ■procedure can not be attained without a thorough investigation of all the proceedings subsequent to the judgment, that are connected with the execution and sale, whether they emanate 'from the sheriff, the clerk, or the court. If, on application like the .present, it should appear that there had been no judgment, or execution, or levy, or that the officer had proceeded to sell after the court had set aside the execution, or if it should appear *that the levy and appraisement had been set aside before the sale, as was the fact in this case, would we be justified in shutting our eyes upon these discoveries, and blindly ordering a deed to he made to the purchaser? I am constrained to answer in the negative. This answer would be forced upon me, by the strict letter of the statute, were I at liberty to overlook the spirit and design of it. In conducting this inquiry, the statute requires three things:
1. The court must examine the proceedings of the sheriff, to as■certain if they have been regular.
*340 2. They must be satisfied that the sale has, in all respects, been made in conformity with the provisions of the act.
3. They must be satisfied of the legality of the sale.
If, on the first branch of the inquiry, the proceedings of the sheriff should appear regular as to the levy, appraisement, return, advertisement, and mode of sale, it would not necessarily follow that the sale had, in all respects, been made in conformity to the-statute. Other parts of the statute might have been violated. When we speak of the legality of a sheriff s sale, we understand that all the proceedings connected with it, from the issuing of the execution, to the striking off of the land, has been regular. To confine the import of that term to its literal signification, which is-the simple act of crying off the premises, would be a narrow interpretation, indeed. The maxim qui heret in litera, heret in cortice, would well apply. Although the acts of the sheriff, in themselves considered, might be unexceptional, yet if it should appear that the execution on which he acted, had been issued by justice of the peace, or that there had been no levy, or that the levy and appraisement had been regularly set aside before the sale, it could not bo said, that the sale had, in all respects, been made in conformity with the act, nor would the court be satisfied with the legality of the sale, because such circumstances would render the sale a perfect nullity, and clearly.show that the purchaser was not entitled to a deed. Such facts as would avoid a deed after it was made, ought to be sufficient to withhold an order for making it ¿ but on the.limited construction which has been given to the statute, the provisions which are most essential to the legality and validity of the *sale must be disregarded. The act requires an execution founded on a judgment of a court having jurisdiction of the subject matter, on which there must be a levy and an appraisement. These are provisions of the act, and if they have not - been performed, the court can not see that the sale has, in all respects, been made in conformity with them. If the statute provides that there shall be a levy and an appraisement before a sale,, and the sale be made without a levy, it appears as plain as an axiom, that the sale is not made in all respects in conformity with the provisions of the statute, because a levy is one of those provisions. If' such matters as those are not to be regarded, this investigation must be a useless sacrifice of time. The form might be dispensed with, and the deed executed at once. From this- *341 view of the subject, I feel it my duty to examine the objections to the levy, including the orders of court in relation to it, as well as the objection to the appraisement and sale.
The defendant objects:
1. Because the statute under which the levy was made (1821) had been repealed before the issuing.of the vend. expo, on which ■the sale was made.
2. Because the levy on which the sale was made, had been set aside by the court, on motion, and at a subsequent term had been reinstated.
3. Because the lands had not been separately appraised, as the statute directs.
4. Because the sheriff rejected a part of the land levied on and embraced in the mortgage, and refused either to value, or sell it, on an allegation that the title of the mortgagor was defective.
It appears from the record that the plaintiff obtained judgment against the Granville Banking Company, and proceeded to levy an execution on sundry tracts of land, mortgaged to the bank, by three separate deeds. The levy was made in April, 1821, under ■the act of 1820, which was repealed by the act of 1822; the act of 1822 was repealed by the act of 1824, under which the sale was made.
In September, 1822, the court of common pleas set aside the whole levy, on motion of plaintiff, the premises having *been twice offered for sale. At the December term, 1823, the court, on motion, rescinded the order of September, 1822, and'directed the levy of April, 1821, to be reinstated. In the interval, a number of executions were issued on judgments at the suit of other creditors, and levied on the same property, by which those creditors claimed the preference. The different tracts contained in the mortgages were not separately appraised, and a part of the mortgaged property was relinquished by the sheriff, on the ground that the title of the mortgagor was defective. These are the most important facts relating to the points that are to be considered.
1. I agree with the majority of the court, that the first objection can not be sustained, because the repeal of the law under which the levy was made, did not affect the execution previously issued, or the levy that had been made on it. The proceedings, as far as they had gone, were valid. The levy was as operative after the repeal as before it. The new law affected only those proceedings *342 that took place after it came into force. The principle assumed by the defendant, would be inconvenient and mischievous in its: consequences.
The act regulating judgments and executions has been fre> quently changed, and if the repeal of one law, by the substitution of another, should render void the steps that had been previously taken, it would be difficult for judgment creditors to recover their-money, as every revision and repeal would make it necessary to commence de novo, so that it would be impossible to calculate when their labors would come to an end. And it may be remarked that the last statute- refers to judgments, executions, and levies previously made, and, by a fair construction, recognizes them as valid.
It has been decided in this court, in several analogous cases, under the practice act, and under the act in question, that such a change as has taken place in this instance does not affect proceedings which have been had, or rights which have been acquired prior to the change, unless it be expressly so directed. It was not necessary for the plaintiff to obtain a new writ and a second levy. Vide G. Arnold v. Fuller’s heirs, 1 Ohio, 458. The authorities cited *by defendant’s counsel, in support of this objection, do not sustain it. Milner’s case, cited from 3 Burr. 1456, and 1 Black. 451, is not applicable. That was a special jurisdiction, given to the justice, by a statute which had been repealed “to all intents and purposes whatsoever,” without providing any substitute. All jurisdiction .on the subject had been taken away in express and strong terms, and the question was not whether the steps that had been taken were regular, but whether the justices were authorized to proceed any farther in any form. The same remark applies to the case of Hollingsworth v. Yirginia, 3 Hall. 378i That was also a question of jurisdiction. By an amendment to the constitution, the jurisdiction of the court had been entirely taken away, and they were necessarily compelled to stay further-proceedings. But such was not the fact in this case; the subject matter in question was, and continued to be, within the jurisdiction of the court, and the change in the law operated only on the proceedings that should subsequently take place.
The execution and levy had been regularly and legally conducted, and as the whole process of execution is one entire act, the pro* *343 ceedings after the levy relate back, and take their effect from the date of the levy.
Passmore’s case, from 4 Dallas, was an indictment for perjury, founded on the bankrupt laws of the United States. It was ponding when the law was repealed: The court determined that the case was not within the saving clause, and the defendant had a verdict. Duane’s case, from 1 Binney, was an indictment for a libel against a public offieer. Pending the prosecution the legislature of Pennsylvania passed a law, declaring that from and after the passage of that act, no person should be liable to prosecution by indictment for the publication of such papers as the one complained of. The court divided in opinion. The majority, however, decided that the act put an end to the prosecution. But there can not be any analogy between these cases and the one before us.
They were on penal statutes, which are not construed by the same rules, nor with the same latitude of discretion as remedial statutes.
*2. The second objection leads to an examination of the power of the court of common pleas over their own orders and proceedings, and of the effect of their rescinding order of December, 1823. They had an' undoubted right to set aside the levy, and when that was done, the parties in interest were placed on the ground on which they would have stood if the levy had never been made. It appears from the record that the order setting aside the levy was made in September, 1822, and that Buckingham permitted that order to stand till December, 1823, a period of fifteen months, during which time other judgment creditors, availing themselves of the right secured by statute, sued out executions, and caused them to be levied on the same property, by which they claim a lien, to the exclusion of the plaintiff. Section 17 of the act regulating judgments and executions provides that no judgment, heretofore rendered, or which may thereafter be rendered, on which execution shall not have been taken out and levied before the expiration of one year, next after the rendition of such judgment, shall operate as a lien on the estate of any debtor, to the prejudice of any other iona fide judgment creditor.
From September, 1822, to December, 1823, Buckingham had no levy on the property in question. His levy having been set aside on his own motion, he stood, as to other judgment creditors, as though no levy had ever been made, and a new execution and levy *344 became necessary; but if it could be admitted that the court had power at the December term, to revoke an order which had long before become matter of record, and to reinstate the levy on the old execution, it must, as to third persons, operate as a levy from that term, and consequently the plaintiff will have lost his preference, because much more than twelve months had elapsed, and other judgments had been levied upon the same property. It is impossible for the order in December, 1823, to relate back, so as to divest rights legally vested before it was made. Such an operation would defeat the intention of the statute.
It appears to me that this question may be brought within a narrow compass.
*Had Buckingham a levy on these lands when the junior judgments were levied?
He certainly had not, as appears from the record, and as his judgment at that time was of more than three years’ standing, he had lost his preference, by section 17 of the statute of 1824, and it was not in the power of the court to restore it, so that, whether the court had or had not power to pass the rescinding order, does not change the effect, for, admitting they had the power, it could not operate retrospectively. The plaintiff’s rights must stand as if his levy had been made at the time of the rescinding order. This principle was fully settled by this court, in the case of Patten v. Hedges, at the present term. It was decided in that case, that after Patten had set aside his levy, he stood, as to all subsequent proceedings, as though no levy had been made, and that the property could not afterward be sold till it was again seized in execution. It was also decided that by setting aside his levy, after the expiration of twelve months from the date of his judgment, he lost his preference by section 17 of the act of 1824, although he had the first judgment, and had made his first levy within the term of twelve months.
3. The third objection renders it necessary to look into the statute subjecting mortgaged premises to execution on judgments against banks and bankers. Section 14 makes it the duty of the officers to ascertain and report to the court the amount due on the mortgage. Section 15 provides, that when lands are mortgaged to secure a sum greater than the value thereof, the interest of the mortgagee shall not be sold for less than two-thirds of the appraised value; and when mortgaged for a sum not exceeding the value *345 thereof, the same shall not be sold for less than two-thirds of the •sum due on such mortgage. Section 16 directs, that when more than one tract is included in the mortgage, the amount due on the mortgage shall be ascertained, and each tract shall be appraised separately, and if the appraised value of the land shall exceed the sum due on the mortgage, it is made the duty of the sheriff to apportion the amount due on the mortgage among the several tracts of land, in just proportion to their appraised *value, and to sell each tract of land contained in the mortgage, for not less than two-thirds of the amount apportioned to the same, liable to be redeemed by the mortgagor, by payment of the amount apportioned to the same. Section 17 requires all lands held by a bank, in fee simple, or in trust, to be valued and sold as in other cases of execution.
It appears from the record, that a large number of tracts of land was levied on, and that these tracts were contained in three separate mortgages, in which different persons were concerned as mortgagors; it was, therefore, the duty of the officer to ascertain the amount due on each mortgage separately, and to make separate appraisements of the several tracts embraced in each mortgage, and in all respects to proceed in the apportionment and sale, under section 16, as though the mortgaged premises had been taken -on separate executions, against different defendants, because, it might be, that the money due on one mortgage was more than the value of the land, and the money due on another was less, in which case, each tract contained in the former would be sold for two-thirds of its value, while each tract contained in the latter would be sold for two-thirds of its proportion- of the mortgage money, apportioned as above. This course must be pursued where the parties to each mortgage are the same, and the necessity for observing it is much more apparent where they are different. If it is not attended to, lands may be offered and sold at two-thirds of their valuation, when the law directs that they be offered and sold at not less than two-thirds of the money due on the mortgage. The officer was not at liberty to proceed as though the lands had been all embraced in one mortgage. By pursuing this course, he has subjected them all to be sold at two-thirds of the valuation, and it was impossible for the court to decide on his report, whether or not some portion of them ought not to have been sold under .that provision, which gives the mortgagor a right of redemption on the terms prescribed.
*346 The proceedings of the officer, in relation to the valuation appear to be defective and irregular in another particular. He has not reported the appraisement of all the Hand, although the statute makes it his duty to cause each tract contained in the mortgage to be appraised, and gives him no discretion on that subject. The report was imperfect in this respect, and'it was impossible for the court to decide under which bi’anch of section 16 the lands ought to have been sold, admitting that it was correct tc treat the three mortgages as one.
4. The fourth and last objection that I shall notice is, the conduct of the sheriff in releasing a part of the mortgaged premises from the execution. One of the mortgages contained one thousand seven hundred and fifty acres, of which about one thousand one hundred acres were valued and sold — the residue having been given up by the sheriff, on the ground that the title of the mortgagor was defective. The objection to the title seems to have been made by the plaintiff, and decided by the officer on his own authority. This step was in direct opposition to the statute, which requires each and every tract to be appraised and sold. It contains no provision for rejecting or omitting any portion of the premises, much less does it authorize an officer to decide on the validity of the title, at the instance of the plaintiff. Questions of title involve matter of fact and of law, which the sheriff is not supposed to be capable of deciding, and the statute, as we should naturally expect, gives him no such authority. Such an examination of title must necessarily be ex parte. The sheriff can hear but one side, and of course there would be but a slender prospect of a correct result if he were, in other respects, competent to decide the question. Such a practice would be fraught with mischief. Judgment creditors might select favorite tracts to the exclusion of others less desirable, and by reducing the reported value of the mortgaged premises below the amount due on the mortgage, might subject them to a sale without the statutory right of redemption. These consequences are serious, and show the impolicy and danger, as well as the illegality of the practice resorted to in this case. It may happen that the title to a part, or the whole of the land contained in a mortgage, is objectionable. The judgment creditor may be embarrassed by that circumstance, but this does not authorize Hiim to select his own mode of getting over the difficulty ' —he is not at liberty to decide the matter himself, or to have it *347 decided in a summary way by the sheriff. The rights of other persons are involved, and must be respected, however inconvenient-the consequences may be to the plaintiff. In.ordinary cases, the creditor may select for himself; but in this case, he is pursuing an-extraordinary remedy, given by statute, and it is necessary to follow it without any material variation. The plan devised by the legislature will be deranged, and some of the most material principles contained in it must be lost, if the valuation does not embrace every tract contained in the mortgage.
On these grounds, it appears to me that the proceedings on the-execution have been irregular — that the sale was manifestly illegal, and that the order applied for ought not to be granted.†

NoTE by the Editor. — Sheriff’s deeds, see note to Walsh v. Ringer, it. 327.